UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF WISCONSIN

_____

SUSAN KAYE WINKELSPECHT,            )
                                    )
                    Plaintiff,      )
                                    )
vs.                                 )
                                    )   Civil Action No. 10-CV-1072
GUSTAVE A. LARSON CO. PLAN,         )
UNUM LIFE INSURANCE COMPANY         )
   OF AMERICA,                      )
And                                 )
GUSTAVE A. LARSON COMPANY,          )
                                    )
                    Defendants.     )

_____

**AMENDED COMPLAINT**
_____

The Plaintiff, Susan Kaye Winkelspecht, by her attorneys, Steven Evan Gillis, and Scott B. Taylor, Urban & Taylor, S.C., as and for her causes of action alleges as follows:

### I. JURISDICTION AND VENUE

1. Jurisdiction of the Court is based upon the Employee Retirement Income Security act of 1974 (ERISA) and in particular 29 U.S.C. §§1132 (e)(1) and 1132 (f). Venue and jurisdiction are, therefore, proper pursuant to 29 U.S.C. § 1132, as these provisions give the District Court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of a group life insurance plan underwritten and insured by UNUM Life Insurance Company of America. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over

actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been constructively exhausted in that Defendants failed to comply with ERISA's notice requirements pursuant to 29 C.F.R. § 2560.503-1 and further, in a breach of fiduciary duty, the plan administrator and/or its' designee failed to acknowledge an application for benefits under the plan. Moreover, any failure to exhaust administrative remedies should be excused as the exhaustion of internal remedies under the Gustave A. Larson Co. Plan would be futile.

3. The venue is proper in the Eastern District of Wisconsin, Green Bay Division. 29 U.S.C. § 1132 (e)(2), 28 U.S.C. § 1391, because the Eastern District of Wisconsin is where the Plan is administered, where Defendant GALCO resides and where the breaches took place.

## II. NATURE OF ACTION

4. This is a claim seeking payment of life insurance benefits pursuant to a policy of insurance underwritten and insured by the UNUM Life Insurance Company of America ("UNUM") to provide life insurance benefits under a benefit plan entitled "Gustave A. Larson Plan" under Plan No.:501. This action, seeking recovery of benefits, is brought pursuant to § 502 (a)(1)(B) of ERISA (29 U.S.C. § 1132 (a)(1)(B).

## III. PARTIES

5. The Plaintiff, Susan Kaye Winkelspecht (hereinafter "Plaintiff"), is an adult whose residence address is 900 Royal Boulevard, Green Bay, Wisconsin 54303, Brown County, Wisconsin.

6. Plaintiff is the widow of Harry Winkelspecht (hereinafter "Decedent") who died on October 28, 2009. Plaintiff is empowered to bring this civil action against the Defendants pursuant

to 29 U.S.C. §1132(a)(1)(B) as the Decedent's designated beneficiary seeking to recover the group term life insurance death benefit due and owing to her pursuant to the group term life insurance portability benefit provided by the Plan for the Decedent participant and the Plaintiff beneficiary (hereinafter the "Portability Benefit") and/or is seeking an Order from the Court for specific performance, restitution and restoration of the Portability Benefit.

7. Defendant Gustave A. Larson Co. Plan (hereinafter "Plan") is an employer sponsored life and accidental death and dismemberment plan created under 29 U.S.C. §1001, *et. seq.* (ERISA), that provided benefits for eligible employees of Defendant Gustave A. Larson Company and their beneficiaries.

8. Defendant UNUM Life Insurance Company of America (hereinafter "UNUM"), a foreign corporation, is the insurer of the insurance policy issued to the Plan and is a fiduciary of the Plan.

9. Defendant Gustave A. Larson Company (hereinafter "GALCO") was the Decedent's employer for more than 35 years and at all times relevant herein has been the Plan Administrator and a Fiduciary of the Plan. GALCO's principal business address is W233 N2869 Roundy Circle West, Pewaukee, Wisconsin.

10. The Plan is an employee welfare benefit plan as defined at 29 U.S.C. §1002(1)(A) and thus governed by the Employee Retirement Income Security Act commonly known as "ERISA."

## IV. FACTS

11. At all relevant times, from the time Defendants GALCO and UNUM created the Plan: Defendant GALCO undertook duties as both a Plan Fiduciary and the Plan Administrator and

3

UNUM's duties commenced and continued as a Plan fiduciary.

12. Until the Decedent's retirement effective on or about January 1, 2008, the Decedent was both an employee of Defendant GALCO and a participant in the Plan.

13. As a participant in the Plan, the Decedent was provided with the Summary Plan Description comprised of the 52 pages attached hereto and denominated "SPD - Attachment 1" (hereinafter the "SPD").

14. Among other benefit features of the Plan described in the SPD, upon the Decedent's retirement the Decedent was granted the benefit of "Portability" of the Plan's group term life insurance coverage (hereinafter "Portability Benefit").

15. As described in the SPD, the Portability Benefit available to the Decedent upon his retirement included both continuation of the group term life insurance coverage at the same death benefit amount that the Decedent was insured for at the time of the Decedent's retirement defined by the formula: $1.5 \times$ the Decedent's base salary, which in this case yielded an available \$103,000.00 death benefit.

16. To effectuate the Portability Benefit, the Plan required the Decedent to "apply for portable coverage… and pay the first premium within 31 days after the date" the Decedent retired.

17. The SPD is ambiguous and failed to communicate material facts as to how and where the Decedent was to "apply for portable coverage" and secure the Portability Benefit because no method or place for application is stated, described or specified in the SPD.

18. The SPD is ambiguous and failed to communicate material facts as to how and where the Decedent was to "pay the first premium" because no method, means or place for such premium payment is stated, described or specified in the SPD; and the SPD contains no express prohibition(s)

4

or limitation(s) concerning whether the Defendant or any third party could serve as the conduit by which or the source of funds from which the Decedent would discharge his duty to "pay" the premium(s).

19. At all relevant times the SPD contained a general section entitled "Assistance with Your Questions" which instructed the Decedent to direct any questions about the Plan to Defendant GALCO as Plan Administrator.

20. . As demonstrated by the Interoffice Memorandum issued by Defendant GALCO at the relevant time (a true and correct copy of which is attached hereto and denominated "Attachment 2") the Defendant designated both Doreen Raebel and Susie Klein as Plan Administrator representatives and sources of information and administrative assistance with regard to the Plan.

21. The Decedent timely, upon his retirement from employment, directed his inquiry to the Plan Administrator concerning continuation of his term life insurance coverage and pursued the Portability Benefit available under the Plan, with the Plan Administrator's designated representative Doreen Raebel, as evidenced by the attached printed e-mail: confirming that on the eighth day following his retirement the Decedent had apparently done what was necessary to "apply" to effectuate the Portability Benefit to continue his term life insurance; and advising Decedent that the Decedent's obligation to "pay" the premium for the Portability Benefit would be undertaken by Defendant GALCO. (A true and correct copy of that printed e-mail from the Plan Administrator's designated representative is attached hereto and denominated "Attachment 3.")

22. There is no qualification or disclaimer in the Defendant GALCO's designated representative's Attachment 3 written statement or in the SPD concerning what, if any, other obligation(s) the Decedent was required to fulfill to effect and maintain his Portability Benefit under

the Plan.

23. Decedent substantially complied with the Plan's "apply" and "pay" requirements as communicated and required by the SPD, to effect continuation of his portable group term life insurance: (1) in the absence of specific SPD instructions regarding "apply," by initiating contact with the Plan Administrator (to whom he was directed by the general inquiry provision of the SPD); and (2) by making arrangements to effectuate payment of the required monthly premiums (by Defendant GALCO's stated intention to continue to pay the monthly premiums as confirmed in writing by the Plan Administrator's [GALCO's] designated representative).

24. The written representation made by the Defendant GALCO's designated representative in Attachment 3 is entirely consistent with the ambiguous language contained in the Portability Benefit language of the SPD.

25. The SPD contains no definition(s) of the terms "apply" or "pay."

26. The SPD contains no language referencing, informing, advising, directing or specifying the means, methods, processes or requirements of the Plan concerning "apply" or "pay" in the context of the Portability Benefit such that the Decedent would have been apprised that accepting Defendant GALCO's offer to act as the conduit or source of Portability Benefit premium payment was prohibited by the Plan.

27. The SPD contains no language that would have otherwise apprised the Decedent that there was something more the Decedent needed to do following his January 1, 2008 retirement to "apply" and thereby effectuate the Portability Benefit and continue the available $103,000 group term life insurance coverage for the benefit of the Plaintiff.

28. Attachment 3 is an admission by the Defendant GALCO's designated representative

that by Decedent's interaction with the Plan Administrator's designated representative within the Plan mandated 31-day time period, the Decedent had complied with the Plan's Portability Benefit eligibility requirements of applying for and making arrangements for the premium payment for continuation of the $103,000 group term life insurance coverage for the benefit of the Plaintiff.

29. The Plan Administrator's authorized representative's written statement (Attachment 3) both confirms the Decedent's expressed intent to effect the Portability Benefit and the Decedent's effort to effectuate and make an arrangement to pay the premium(s) for the Portability Benefit as required by the Plan before the expiration of the 31-day time limit.

30. Neither the Decedent nor the Plaintiff received any notification of termination of the Portability Benefit, which Decedent sought to provide Plaintiff with the death benefit payment of $103,000.00 in the event of Decedent's death, until Plaintiff made a claim for the $103,000.00 death benefit to the Plan Administrator and thereafter UNUM following Decedent's death.

31. Plaintiff has substantially complied with the Plan's benefit claim and administrative appeal requirements and any alleged noncompliance with those requirements is the direct product of both: the Defendants' conduct; and the manner in which the Plan was drafted and administered by the Defendants at all times material to this case.

32. Upon making her initial $103,000.00 death benefit claim to the Plan Administrator on November 18, 2009 Plaintiff was informed that the term life insurance coverage for the Decedent was not "in force" and that the Decedent "did not continue anything" (Attachment 4). However, this written denial failed to comply with a ERISA claims procedures, specifically 29 C.F.R. § 2560.503-1(f)(3), in that the Plan Administrator did not provide the Plaintiff with a statement detailing the basis for the denial, advise her of her appeal rights, or state the information necessary to perfect her

claim.

33. Following the Attachment 4 initial rejection of the Plaintiff's claim, on November 24, 2009 the Plaintiff proceeded to appeal her claim for the portable life insurance benefit to the Plan Administrator by providing the Plan Administrator with a copy of Attachment 3 (see Attachment 5).

34. Attachment 5 also includes the Plan Administrator's November 25, 2009 response to the Plaintiff's second attempt to make this death benefit claim. In that response the Plan Administrator asserts: "…I have no idea why Doreen would put this in an e-mail – there is no coverage after termination because he's no longer part of a 'group.'

35. The aforementioned written denial failed to comply with ERISA claims procedures, specifically 29 C.F.R. § 2560.503-1, in that the Plan Administrator did not provide the Plaintiff with a detailed basis for the termination, advise her of her appeal rights, or state the information necessary to perfect her claim. Further, nothing in the aforementioned written denial identified the items considered by the plan administrator, nor was there an indication of the administrator's assessment of any of those items or the weight given to them.

36. Upon information and belief, neither the plan administrator, nor UNUM, performed a meaningful, full and fair review of plaintiff's claims for benefits, as required by 29 C.F.R. § 2560.503-1.

37. By its plain language the Plan requires: "All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim." (SPD p. 52 – Attachment 1.)

38. After the Thanksgiving 2009 holiday, contact was initiated directly with Defendant UNUM. UNUM's representative stated that the Plan Administrator GALCO keeps track of all

8

employees in the Plan, and that GALCO could have maintained coverage for the Decedent after he retired and in fact paid the premium for that coverage. UNUM's representative quickly added that UNUM did not maintain records "of employees in the Plan."

39. As demonstrated by Attachment 5, Plaintiff thereafter on December 18, 2009 appealed the denial of the Plaintiff's death benefit claim directly to GALCO's executives.

40. Plaintiff appealed the denial of her life insurance benefit claim to the Plan Administrator until the Plan Administrator by its attorney notified the Plaintiff in writing as to the reasons that her appeal was being denied (Attachment 6).

41. The aforementioned written denial failed to comply with ERISA claims procedures, specifically 29 C.F.R. § 2560.503-1, in that the Plan Administrator did not advise the plaintiff of her appeal rights or state the information necessary to perfect her claim. Further, nothing in the aforementioned written denial identified the items considered by the plan administrator, nor was there an indication of the administrator's assessment of any of those items or the weight given to them.

42. Upon information and belief, neither the plan administrator, nor UNUM, performed a meaningful, full and fair review of plaintiff's claims for benefits, as required by 29 C.F.R. § 2560.503-1.

## COUNT I - ESTOPPEL

43. Plaintiff incorporates the allegations contained in Paragraphs 1 through 42 as if fully stated herein.

44. Along with a small select group of other employees, during the final decade or so of Decedent's employment, the Decedent was designated by Defendant GALCO as a "key" employee

9

and thereby rendered eligible for certain benefits not available to most of Defendant GALCO's other employees.

45. During the course of the Decedent's employment and following the Decedent's retirement, Defendant GALCO maintained a "key man" life insurance policy insuring the life of the Decedent and upon Decedent's death Defendant GALCO received the death benefit from that life insurance policy.

46. The Decedent's acceptance of the Plan Administrator representative's (GALCO's) written statement, that the life insurance would continue and GALCO would pay the premiums for the Portability Benefit for Decedent, was reasonable in the context of the Decedent's knowledge that: as a "key" employee the Decedent had historically received special benefits not available to all other employees; that the Defendant GALCO intended to continue to be the beneficiary of the key man life insurance policy on the Decedent's life following Decedent's retirement; and that there was no language in the SPD or in the Plan Administrator representative's (GALCO's) written statement (Attachment 3) which would otherwise reasonably apprise the Decedent that there was something or anything more Decedent needed to do to fulfill Decedent's obligations to "apply" or "pay" for the Portability Benefit.

47. Decedent's act of contacting the Plan Administrator's designated representative to inquire about effecting the Portability Benefit was the direct product of Plan language ambiguity concerning where and how Decedent was to fulfill his SPD obligations to "apply" and "pay" within 31 days of his retirement date in order to accept the Portability Benefit offered in the SPD. 4 As to certain other benefits the SPD describes particular required application forms and contains specific instructions as to where to get the required application form and where to deliver the

completed application and first premium payment.

48. For example, the SPD provides application and payment details regarding the "conversion privilege" benefit which allows employees to elect to convert a stated amount of their group term life insurance to a level premium whole life plan upon retirement (or other stated events); but there are no such directions or instructions in the separate SPD section which presents and describes the Portability Benefit.

49. The SPD language, as to the Portability Benefit, is such that the Decedent, as an average person, could not read the Plan documents and determine for himself that any particular form or method of application or any particular means, form, method or place of payment was required or necessary to effect portability (and continuation) of his group term life insurance death benefit for the benefit of the Plaintiff, because the only language contained in the SPD regarding the Portability Benefit, other than the 31-day time limit, is vague, undefined, general and subject to multiple interpretations.

50. The SPD directed the Decedent that "If you have any questions about your Plan, you should contact the Plan Administrator" (Attachment 1 page 51), and Decedent acted reasonably and in accord with the Plan's instructions when Decedent made his inquiry to the Plan Administrator (GALCO) and expressed Decedent's intentions and inquiries to the Plan Administrator's designated representative Doreen Raebel (Attachment 2), which resulted in the January 8, 2008 e-mail issued by Ms. Raebel on behalf of the Plan Administrator (Attachment 3).

51. The Decedent reasonably relied upon the Plan Administrator's designated authorized representative's statements (documented in Attachment 3), as discharging his duty to both apply for and make arrangements to pay for continuation of the $103,000.00 group term life insurance

11

coverage for the benefit of the Plaintiff.

52. The Plan Administrator's designated representative's assurances expressed in Attachment 3, were a knowing misrepresentation to the Decedent, in writing, that the Decedent had done what Decedent needed to do to both apply and arrange for the premium payment necessary to effectuate the continuation of the Plan's Portability Benefit, and that until further notice Defendant GALCO would act for and on behalf of the Decedent to timely make the required premium payments.

53. Defendant GALCO failed to timely effectuate the Portability Benefit and make the required premium payments.

54. The group term life insurance policy coverage for the Decedent was not continued by effectuation of the Plan's Portability Benefit and instead was cancelled by the Defendants upon expiration of the thirty-one (31) day post-retirement coverage continuation period.

55. The Decedent reasonably relied upon the Plan Administrator's designated representative's misrepresentations: that Decedent had applied for; and that Defendant GALCO would pay the premium(s) necessary to effectuate the Portability Benefit and maintain the Decedent's group term life insurance, all to the Plaintiff's detriment.

56. Between the time of Decedent's receipt of the Plan Administrator's written representations (Attachment 3) and Decedent's death, the Plan and the other Defendants failed to notify Decedent of any other act or action(s) the Plan required of the Decedent to effectuate and maintain the Portability Benefit, other than those actions which the Decedent had timely engaged in with the Plan Administrator's designated representative as commemorated in Attachment 3.

12

## COUNT II - BREACH OF FIDUCIARY DUTY

57. Plaintiff incorporates the allegations contained in Paragraphs 1 through 56 as if fully stated herein.

58. Defendants GALCO and UNUM are Plan Fiduciaries.

59. Defendants GALCO and UNUM breached their duty as Plan Fiduciaries by failing to adequately describe any precise required particular way, means or method of "applying" for or "paying" for the Plan's Portability Benefit; if in fact there was only one particular required way of applying or a specific required payment method necessary to effectuate that benefit.

60. The failure of the Plan Fiduciaries to include any explicit, specific, definitional, descriptive or particular information in the SPD or any other communication reasonably informing Decedent what he was required to do to accept the Plan's offer of the Portability Benefit, created ambiguity and was misleading to the Decedent as to: where and how to apply for the Portability Benefit; and by what particular arrangement, means or method the premium must be paid to effectuate and maintain the Portability Benefit.

61. The SPD generally instructed the Decedent to direct all inquiries to the Plan Administrator, but the Plan Fiduciaries and Plan Administrator in addition to their failure to include complete and accurate information in the Plan documents, also apparently failed to adequately inform or advise the Plan Administrator's designated representatives (and thus the Decedent) as to any particular required means of applying for or any specifically required payment method necessary for Decedent to accept the Plan's offered Portability Benefit. In addition, upon information and belief, the Plan Fiduciaries and Plan Administrator were negligent in their failure to use reasonable care in the hiring, training and/or retraining of the Plan Administrator's designated representatives,

13

as well as the failure to implement proper policies and procedures for providing the necessary information for Plan beneficiaries regarding the required application and payment process necessary for Decedent to accept the Plan's offered Portability Benefit.

62. At all relevant times the Plan Fiduciaries and Plan Administrator misled the Decedent by failing to provide any information to the Decedent: either in the Plan documents; or by any Plan Administrator written or verbal representations; that was contrary to the Plan Administrator's written representations contained in Attachment 3 concerning the Decedent's attempted acceptance of the Portability Benefit offered in the Plan.

63. The written representations made to the Decedent by the Plan Administrator's designated representative in Attachment 3, concerning the effectuation of the Portability Benefit here, were consistent with and did not conflict with the language contained in the SPD or any other Plan communication to the Decedent concerning the Portability Benefit.

64. The Defendants breached their fiduciary duty to provide complete and correct information to the Decedent, because: the SPD and other written materials are ambiguous and misleading as to where and how to "apply" for and "pay" for the Portability Benefit; and the Plan Administrator's designated representative Doreen Raebel provided written materially misleading information (Attachment 3).

65. There is no information in the SPD or any other document which would protect the Decedent from the materially misleading written information the Decedent received from the Plan Administrator as Attachment 3.

66. Pursuant to 29 U.S.C. Section 1022(a) the Defendant fiduciaries were obligated to provide Plan documents written in a manner calculated to be understood by the average Plan

14

participant and to be sufficiently accurate and comprehensive to reasonably apprise participants and beneficiaries of their rights and obligations under the Plan.

67. Pursuant to 29 U.S.C. Section 1022(b) the SPD must include, among other things, information about the Plan's requirements respecting eligibility or participation and benefits as well as information regarding the circumstances which may result in disqualification, ineligibility, denial or loss of benefits.

68. The Defendants as Plan Fiduciaries failed to provide Plan documentation sufficient such that the Decedent, as an average person, could read the SPD and determine what exactly he had to do to timely "apply" and "pay" the premium necessary to accept the Plan's offered Portability Benefit.

69. The Defendants, as Plan Fiduciaries, failed to provide specific referral to any other source of information other than the SPD general referral to the Plan Administrator, thus leading the Decedent to believe: that by contacting and working with and through the Plan Administrator the Decedent had timely accepted the Plan offered $103,000 group term life insurance Portability Benefit (for the benefit of the Plaintiff as beneficiary of that policy); and that Decedent would thereafter be notified in writing or some other manner by the Plan Administrator or a Plan Fiduciary as to any change(s) to the availability or requirements necessary to maintain that Portability Benefit for the Plaintiff.

70. As evidenced by Attachment 3 and as required by the SPD, the Decedent acted within the Plan specified 31 days by contacting the Plan Administrator's designated representative to inquire about the means of accepting the Plan offered Portability Benefit.

15

## COUNT III - WRONGFUL DENIAL OF BENEFIT CLAIMS

71. Plaintiff incorporates the allegations contained in Paragraphs 1 through 70 as if fully stated herein.

72. Defendants as Plan Fiduciaries failed to discharge their duties with respect to the Plan solely in the interest of and for the exclusive purpose of providing benefits to the Decedent as participant and Plaintiff as beneficiary, by failing to communicate and provide the material facts and information necessary to enable Decedent to access and secure the Plan's Portability Benefit which the Decedent sought to effectuate for the benefit of the Plaintiff.

73. At all relevant times, the Plan has been administered by the Defendants in a way that unduly inhibited and hampered the initiation of Decedent's claim for the Portability Benefit and thereafter the conduct of Defendants' GALCO and UNUM unduly inhibited and hampered the initiation and processing of the death benefit claims made by and on behalf of the Plaintiff.

74. Both the denial of the Decedent's claim for the Portability Benefit and thereafter the denial of Plaintiff's claim for the death benefit payable pursuant to the Portability Benefit are wrongful because the Plan and the Plan Administrator made Decedent's acceptance of the offered Portability Benefit impossible and thereafter made formal processing of the death benefit claim pursuant to the claims policy set forth in the Plan inhibited, hampered and ultimately impossible for the Plaintiff to do anything more than substantial compliance.

75. Defendants GALCO and UNUM failed to deliver death claim forms and obstructed the claim process timely initiated by Plaintiff's representative (daughter).

76. The Plan Administrator wrongfully refused to grant the administrative appeal made by and on behalf of the Plaintiff.

16

77. Defendants GALCO and UNUM failed to process the Plaintiff's death claim as required by the Plan's specified claim process.

78. Defendants GALCO and UNUM failed to assure that the Decedent participant and the Plaintiff beneficiary's rights and benefits under the Plan were accessible and delivered to the Decedent participant and Plaintiff beneficiary upon their substantial efforts exercise of their Plan rights in accord with the Plan.

79. Defendants GALCO, UNUM and the Plan failed to reasonably advise the Decedent as to how to perfect his claim against the Plan for the Portability Benefit at the time Decedent made his inquiry seeking to accept the Plan's offer of the Portability Benefit.

80. Defendants GALCO, UNUM and the Plan failed to advise the Plaintiff how to perfect her death benefit claim against the Plan at the time the Plaintiff timely made her initial death benefit claim to both Plan Administrator and UNUM.

81. As Plan Administrator, GALCO failed to provide adequate notice to the Decedent in writing that his effort to apply for and accept the Plan's offered Portability Benefit had been denied.

82. Plan fiduciaries GALCO and UNUM failed to properly instruct, inform or require their agent the Plan Administrator through its designated representative to provide Decedent with adequate notice in writing that his attempt to apply for and accept the Plan's offered Portability Benefit had been denied or was otherwise inadequate.

83. The Defendants failed to notify the Plaintiff that her representative's initial claim for the death benefit was in any way inadequate and failed to cite to the Plaintiff or her representative those Plan provisions necessary for Plaintiff to perfect her claim for death benefit under the Plan. Instead, those Defendants engaged in a course of obstructive denial conduct which inhibited,

17

hampered and discouraged any further efforts by the Plaintiff or her representative to further pursue and perfect a death benefit claim through UNUM by filing the death claim benefit form described in the Plan.

84. Both the Decedent and the Plaintiff substantially complied with the Plan requirements with regard to Decedent's initial claim for the Portability Benefit and thereafter in the conduct of the Plaintiff's claim for the death benefit.

85. The Plan fails to provide a clear appeal process, but Plaintiff has substantially complied with the Plan's appeal process.

86. As a result of the Defendants' failure to administer the Plan's claim procedure in compliance with the law, Plaintiff seeks to have the Portability Benefit and death benefit accruing from the Portability Benefit reinstated by the Court.

## VI. RELIEF REQUESTED

87. Plaintiff incorporates the allegations contained in Paragraphs 1 through 86 as if fully stated herein and says further that: As a direct result of the Defendants' willful misrepresentations, breaches of their fiduciary duty, wrongful denial of Decedent's claim for the Plan's Portability Benefit, and wrongful denial of the Plaintiff's claim for the death benefit accruing from the wrongfully denied Portability Benefit, Plaintiff has been harmed: by the loss of the $103,000 death benefit which the Decedent attempted to secure for Plaintiff's support and benefit in Decedent's absence by taking action(s) to accept the Plan's offered Portability Benefit through the Plan Administrator (minus those premiums the Decedent would have been required to pay prior to his death); by the loss of interest/earnings on that sum which would have accrued to Plaintiff beginning in December 2009; and by the attorneys fees and costs incurred by Plaintiff in pursuit of this action.\

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

A) For an Order from the Court for specific performance, restitution and restoration of the Portability Benefit Decedent applied for and made arrangements to pay for;

B) For payment of the death benefit Plaintiff was entitled to under the Portability Benefit feature of the Plan, plus interest but minus those premium payments Decedent would have made prior to his death;

C) In the alternative, Plaintiff is entitled to an Order remanding this matter to the Plan Administrator, directing it to properly consider the plaintiff's claim in accordance with the terms of The Plan.

D) For the Plaintiff's costs and attorney's fees incurred in the prosecution of this action; and;

E) For such other and further relief as the Court deems just and proper.

Dated this 3rd day of May, 2011.

s/Steven Evan Gillis
Attorney for the Plaintiff
415 So. Washington Street
Green Bay, WI 54301
Phone: 920-965-0745
Fax: 920-432-6716
E-mail: sgillis@new.rr.com

By: /s/ Scott B. Taylor
Urban & Taylor s.c.
Attorneys for the Plaintiff
Urban & Taylor Law Building
4701 N. Port Washington Road
Milwaukee, Wisconsin 53212
Telephone: 414-906-1700
Fax: 414-906-5333
E-Mail: staylor@wisconsininjury.com